## In re Mark E. Warren, Esq.

[704 A.2d 789]

No. 96-376

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 21, 1997

*Shelley A. Hill*, Bar Counsel, White River Junction, Appellant.

*Mark E. Warren*, Pro Se, Boston, Massachusetts, Appellee.

**Per Curiam.** This is an appeal by bar counsel of a decision of the Professional Conduct Board recommending an admonition as discipline for respondent's misconduct in violation of DR 2-101(2). We decline the Board's recommendation and impose a public reprimand.

Respondent attorney's wife filed for divorce in 1994 and began living with another man, D.T. At that time D.T. was separated from his wife, P.T. Between September 20, 1994 and October 4, 1994, respondent sent to P.T. three letters, which are the subject of this proceeding.

In the first letter respondent tells P.T. that his wife is living with her husband, D.T., and that he wants to stop their relationship by "making his life a living hell." Although respondent does not identify himself as an attorney, he states that he can help her get a divorce from her husband "at no cost to you but at great expense to him." Respondent repeatedly asks P.T. to contact him. The letter concludes by stating that respondent "will get tremendous satisfaction out of assisting [P.T.] to hit [D.T.] so hard that he will join me in wishing he was never born."

The second letter dated September 27, 1994 refers to respondent's first letter and asks P.T. to contact him. Finally, on October 4, 1994, respondent sent the third letter to P.T. requesting, yet again, that she contact him. In this letter respondent identifies himself as an attorney, stating that "the reason I think I can help you is that . . . I am a lawyer specializing in domestic relations."

After holding a hearing, a six-member plurality of the Board concluded that respondent made misleading representations about himself. Respondent could not ethically represent P.T. in a divorce action or obtain a cost-free divorce for her. Likewise, he could not ethically assist her to make D.T.'s life "a living hell." The plurality, therefore, determined that the letters were likely to create an unjustified expectation about respondent's ability to successfully represent P.T. in a divorce action in violation of DR 2-101(2).*

A five-member concurrence agreed that respondent violated DR 2-101(2), but disagreed with the plurality's finding that his conduct amounted to "minor misconduct." Finally, two members dissented, finding that respondent's conduct was not a violation of his professional responsibilities.

---

*DR 2-101(2) prohibits a lawyer from making a communication about the lawyer or the lawyer's services that "is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Code of Professional Responsibility or other law."

The Board was also divided as to the proper sanction. The plurality recommends a private admonition, believing this is a case of minor misconduct. The concurrence recommends a public reprimand, believing that respondent's misconduct is of a more serious nature.

Initially, respondent has not appealed the Board's finding that he violated DR 2-101(2). Instead, respondent argues that this Court lacks jurisdiction to sanction him as an attorney because he has resigned from the Vermont bar. We disagree.

■ This Court's disciplinary authority extends to "[a]ny lawyer admitted in the state, including any formerly admitted lawyer with respect to acts committed prior to resignation." A.O. 9, Rule 4A(1). Although respondent resigned from the Vermont bar on November 15, 1996, the letters predicating this disciplinary hearing were sent while respondent was admitted. This Court, therefore, has jurisdiction to sanction respondent notwithstanding his resignation.

We now consider whether a private admonition is the appropriate sanction for respondent's misconduct. Bar counsel essentially argues that we should reverse the Board's recommendation that we admonish respondent and impose a more stringent sanction because he knowingly violated his ethical obligations as an attorney. We agree.

When sanctioning attorney misconduct, we have looked to the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards) for guidance. See, e.g., *In re Pressly*, 160 Vt. 319, 322, 628 A.2d 927, 929 (1993); *In re Rosenfeld*, 157 Vt. 537, 546, 601 A.2d 972, 977 (1991). The Standards contain recommended sanctions for ethical violations and identify four factors that courts should weigh when determining whether the recommended sanction is appropriate. The four factors are the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating or mitigating circumstances. See *In re Karpin*, 162 Vt. 163, 173, 647 A.2d 700, 706 (1993); ABA Standard 3.0.

ABA Standard 5.13 provides that "[r]eprimand is generally appropriate when a lawyer knowingly engages in . . . conduct that involves . . . misrepresentation and that adversely reflects on the lawyer's fitness to practice law." Standard 7.2 suggests that a lawyer be suspended when the lawyer "knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to . . . the public or the legal system." If, however, the conduct is an isolated instance of negligence that causes little or

no actual or potential injury, the Standards recommend an admonition.

A private admonition is not appropriate in this case because respondent knew when he sent the letters that his offer to represent P.T. was a violation of the Code of Professional Responsibility. Respondent sought to conceal his conduct. In his first letter, he asked P.T. to "keep this letter and our relationship a secret. No one must know that I know about you." That respondent tried to keep his conduct a secret indicates that he knew that it was improper. Moreover, respondent's testimony at the hearing and the content of his letters only make sense as an offer to use his knowledge of the law and legal experience in an unethical manner. Finally, respondent admitted knowing that he could not ethically represent P.T. When the Board asked him whether it would have been a violation of the disciplinary rules for respondent to have represented P.T., respondent replied, "Yes, absolutely."

It is no defense for respondent to claim that he was not acting in his capacity as an attorney. "An attorney is subject to [discipline] even for actions committed outside the professional capacity." *In re Berk*, 157 Vt. 524, 530, 602 A.2d 946, 949 (1991). Additionally, the record is barren of any evidence to support this argument. When asked how he would obtain a divorce for P.T. at no cost, respondent first replied that he intended to refer the case to another attorney; yet he never contacted the attorney to determine whether she would take the case for free. Respondent then indicated that he believed P.T. was indigent and, presumably, that she could obtain free legal services; yet he admitted that he "didn't know what the facts were."

We, therefore, find that respondent knew that his conduct was improper. We note that the Board's opinion does not make an express finding as to respondent's mental state, other than to say that he acted "selfishly." On this record, however, the Board's failure to make a finding that respondent knowingly violated his ethical obligations was clearly erroneous. See *In re Bucknam*, 160 Vt. 355, 362, 628 A.2d 932, 936 (1993).

Respondent's mental state is an important element in determining what sanction should be imposed. Given our disagreement with the Board over respondent's mental state, we must revisit the Board's decision to recommend a private admonition. The Board based its recommendation on its finding that respondent's conduct did not cause any injury. We agree that there was little actual injury as a result of respondent's conduct. We do not agree, however, that this is

a case of "minor misconduct" warranting a mere admonition. See A.O. 9, Rule 7A(5)(b) (admonitions proper "[o]nly in cases of minor misconduct"). Respondent knowingly violated his ethical duties and injury was avoided only because P.T. fortuitously decided to file a complaint instead of following respondent's advice.

■■ Sanctions are intended to protect the public from lawyers who have not properly discharged their professional duties and to maintain public confidence in the bar. See *In re Shepperson*, 164 Vt. 636, 637, 674 A.2d 1273, 1274 (1996) (mem.); *Berk*, 157 Vt. at 532, 602 A.2d at 950. Respondent has a prior disciplinary record, including a recent public reprimand. At the Board hearing, respondent refused to even acknowledge the wrongful nature of his actions. If respondent continues to believe this type of conduct is permissible, it increases the likelihood of repeat violations. Taking into account these aggravating factors, a private admonition will neither adequately protect the public, nor will it maintain the public's confidence in the bar. Considering that respondent acted knowingly, but that his conduct caused little actual harm, a public reprimand is the appropriate sanction in this case. Compare ABA Standard 7.2 (suspension if knowing violation) with ABA Standard 7.4 (admonition if little or no injury).

*Mark E. Warren is publicly reprimanded for violation of DR 2-101 of the Code of Professional Responsibility.*