2010 VT 51

**In re Eileen HONGISTO**

[998 A.2d 1065]

Nos. 08-202 & 09-196

¶ 1. June 3, 2010. We granted review of two decisions from the Hearing Panel of the Professional Responsibility Board

---

hand, the test for abuse of a vulnerable adult is purely objective.

(PRB) concerning four complaints claiming violations of the Vermont Rules of Professional Conduct, which resulted in two concurrent six-month suspensions. We affirm the decisions of the Panel suspending respondent Eileen Hongisto from the practice of law for two six-month periods to run concurrently. Additionally, as a condition to her reinstatement, we require that, at the time that respondent applies for reinstatement, she must provide the Board with a detailed explanation for her lack of participation over the course of these proceedings.

¶ 2. These two Panel decisions concern a series of events that began in 2006, when a representative of Merchants Bank notified disciplinary counsel that respondent's trust account was overdrawn. Shortly thereafter, disciplinary counsel received an ethics complaint from one of respondent's clients. In both cases, respondent failed to cooperate with disciplinary counsel's investigation of the incidents, resulting in complaints claiming violations of Rule 8.4(d), which states that it is misconduct to "engage in conduct that is prejudicial to the administration of justice." After respondent failed to respond, the charges were deemed admitted. A.O. 9, Rule 11(D)(3) ("In the event the respondent fails to answer within the prescribed time, the charges shall be deemed admitted, unless good cause is shown."). A hearing was scheduled for March 2007. Immediately before the hearing, however, respondent provided disciplinary counsel with an explanation of the trust account overdraft and a response to the client complaint, and disciplinary counsel moved to dismiss both complaints. The Panel, however, denied the motion, noting that practitioners and the public needed to understand that "an attorney's personal problems" do not "excuse his or her obligation to cooperate with disciplinary investigations." The hearing was rescheduled.

¶ 3. Before the rescheduled hearing took place, another of respondent's cli-

ents contacted disciplinary counsel with an ethics complaint, resulting in a third disciplinary investigation. The client alleged that he had paid respondent a retainer, but never heard anything from her. He left between forty and fifty phone messages for respondent — all without any response. He also requested that his papers relating to the case be returned to him, as he was unable to pursue the case without them. Once again, respondent failed to respond to or acknowledge the charges, and, as a result, the charges were deemed admitted. A.O. 9, Rule 11(D)(3). These charges were consolidated with the others.

¶ 4. The day before the hearing was scheduled to occur, respondent requested a continuance, and a conference call was scheduled to address the issue. At the conclusion of the conference call, disciplinary counsel petitioned this Court to transfer respondent to disability inactive status, as is allowed under Administrative Order 9, Rule 21(B). A one-justice panel for this Court issued an entry order giving respondent an opportunity to show cause as to why her license should not be transferred to disability inactive status. *In re Hongisto*, No. 2008-202 (Vt. May 19, 2008) (unpub. mem.). Respondent failed to respond. On June 3, 2008, a three-justice panel transferred respondent's license to disability inactive status, pending determination of incapacity by a PRB hearing panel. *In re Hongisto*, No. 2008-202, 2008 WL 2486071 (Vt. June 3, 2008) (unpub. mem.).

¶ 5. In September 2008, the Panel held a hearing to determine whether respondent was incapacitated such that she should be on disability inactive status. The Panel concluded that respondent was not disabled at that time. Following that decision, this Court allowed respondent the opportunity to file a memorandum to show why the Panel's recommendation should not be adopted. *In re Hongisto*, No. 2008-202 (Vt. Sept. 24, 2008) (unpub.

mem.). After respondent did not respond, we lifted the order transferring respondent to disability inactive status. *In re Hongisto*, No. 2008-202 (Vt. Oct. 28, 2008) (unpub. mem.). At that point, the underlying disciplinary hearings at issue in these cases were scheduled.

¶ 6. In the meantime, respondent's law license expired. Once respondent was reinstated from disability inactive status, the program administrator for the Attorney Licensing Office sent respondent a letter informing her that her license had expired. In the same letter, the administrator informed respondent that she was not at that time in good standing with the Vermont Department of Taxes and was therefore ineligible to relicense. Respondent certified that she was in good standing with the Department of Taxes in a November 19, 2008 letter to the Attorney Licensing Office. The next day, the administrator responded by email to respondent's letter and informed her that the Department of Taxes had not confirmed her return to good standing. Nevertheless, on December 8, 2008, respondent appeared at and participated in a status conference before the Windham Family Court. This resulted in disciplinary counsel bringing additional charges against respondent — specifically for a violation of Rule 5.5(a) for practicing without a license and a violation of Rule 8.4(c) for deceit when renewing a law license. Once again, respondent did not file any response, and the charges were deemed admitted. See A.O. 9, Rule 11(D)(3).

¶ 7. The hearing for the first three alleged violations — the trust account overdraft and the two client ethics complaints — was scheduled for January 21, 2009. After respondent did not call in to a preconference hearing and the Panel was unable to reach her, the Panel postponed the hearing to February 2009. After the hearing, the Panel found that in each of the three alleged violations respondent had violated Rule 8.4(d), which states that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Regarding the most recent client ethics complaint, the Panel additionally found that respondent had violated Rule 1.3 by "failing to act with reasonable diligence in her representation," that she had violated Rule 1.4(a) "by failing to keep [her client] reasonably informed about the status of his case and [failing] to answer [her client's] reasonable requests for information," and that she had violated Rule 1.16(d) "by failing to return [her client's] paperwork when her services were terminated." The Panel imposed a six-month suspension for these violations.

¶ 8. The following month, the Panel held the second hearing, which addressed the alleged violations of Rules 5.5(a) and 8.4(c) stemming from respondent's appearance in family court despite the fact that she was ineligible to practice law at that time due to her expired license. At the hearing, disciplinary counsel moved to dismiss the charge of violation of Rule 8.4(c), and respondent and disciplinary counsel recommended to the Panel that it impose a six-month suspension for the violation of Rule 5.5(a). The Panel found that respondent had violated Rule 5.5(a) by engaging in the practice of law without a license. The Panel accepted the parties' recommendation and imposed a six-month suspension to run concurrently with the six-month suspension imposed in the previous decision.

¶ 9. This Court ordered review of both decisions. *In re Hongisto*, No. 2009-196, 2009 WL 3019661 (Vt. July 7, 2009) (unpub. mem.); see generally A.O. 9, Rule 11(E) ("If no appeal or petition for review is filed with the Court, the Court may order review on its own motion within 30 days of the date the hearing panel decision is filed with the Court."). On appeal, disciplinary counsel argues that the Panel decisions were sound and should be up-

held. Respondent has at no point challenged any of the findings or conclusions of the Panel, nor has respondent submitted a brief to this Court or responded in any way to the arguments advanced by disciplinary counsel in its brief.

## I. Violations

¶ 10. When reviewing decisions of a PRB hearing panel, we apply a deferential standard of review, and we "must accept the Panel's findings of fact unless they are clearly erroneous." *In re Andres*, 2004 VT 71, ¶ 9, 177 Vt. 511, 857 A.2d 803 (mem.) (quotation omitted); accord A.O. 9, Rule 11(E) ("Findings of fact shall not be set aside unless clearly erroneous."). Further, as we have previously stated, we "will uphold the Board's findings — whether they are pure fact or mixed questions of law and fact — if they are clearly and reasonably supported by the evidence." *Andres*, 2004 VT 71, ¶ 9 (quotation omitted).

¶ 11. In its first decision, the Panel found that, in addition to violating her duty under Rule 8.4(d) to cooperate with the disciplinary system in its investigations of the trust account overdraft and client ethics complaints, respondent violated her duty to represent her client with reasonable diligence. See V.R.Pr.C. 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."). The Panel also found that respondent violated two other professional conduct rules by failing in her duties to communicate with her client when her client requested information about his case and to return his papers — respondent held on to her client's papers for years until disciplinary counsel was able to retrieve them and return them to the client. See V.R.Pr.C. 1.4(a)(3)-(4) (requiring a lawyer to "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information"); V.R.Pr.C. 1.16(d) ("Upon termination of representa-

tion, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . ."). The Panel noted that "[r]espondent knew that she was not fulfilling the duties that she owed to her client and to the legal profession." The Panel found that respondent's client had experienced actual and potential injuries — his actual injuries included frustration and aggravation from respondent's failure to communicate with him and his potential injuries were financial in that, due to respondent not returning these files, her client did not and could not pursue a case that he thought he would have won. Moreover, the Panel found that respondent's failure to cooperate with disciplinary counsel in violation of Rule 8.4(d) further increased these injuries and additionally injured the disciplinary system itself by consuming scarce resources and eroding the public's confidence in the legal profession. We find no clear error here, and we therefore affirm the Panel's decision regarding these violations.

¶ 12. In its second decision, the Panel found a clear violation of the attorney licensing rules and therefore determined that respondent violated Rule 5.5(a), which prohibits lawyers from practicing law in jurisdictions where doing so violates the regulation of the legal profession. This charge, like the others, was deemed admitted when respondent failed to respond to the charge. See A.O. 9, Rule 11(D)(3). Further, while at a later point respondent emphasized to the Panel that the violation was inadvertent, Rule 5.5(a) prohibits even the unintentional practice of law without a license. It is ultimately each attorney's duty to ensure that he or she is licensed to practice law before engaging in the practice of law. Once more, we find no clear error and, therefore, affirm the Panel's decision regarding the violation of Rule 5.5(a).

¶ 13. In summary, we see no evidence of error regarding findings of fact or law in

either of the Panel's decisions. We therefore affirm both of the Panel's decisions and hold that respondent violated Rules 1.3, 1.4(a), 1.16(d), 5.5(a), and 8.4(d)

## II. Sanctions

¶ 14. Though this Court ultimately determines what sanctions are appropriate, the Panel's recommendations are accorded deference. *In re PRB File No. 2007-003*, 2009 VT 82A, ¶ 7, 186 Vt. 588, 987 A.2d 273 (mem.) (citing *In re Berk*, 157 Vt. 524, 528, 602 A.2d 946, 948 (1991) (per curiam)). In determining an appropriate sanction, we consider " 'the duties violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and any aggravating or mitigating factors.' " *In re Farrar*, 2008 VT 31, ¶ 11, 183 Vt. 592, 949 A.2d 438 (mem.) (quoting *In re Bucknam*, 160 Vt. 355, 366, 628 A.2d 932, 938 (1993)). This Court has stated previously, however, that "mitigating circumstances are in no sense a defense to the violations." *In re PRB File No. 2007-003*, 2009 VT 82A, ¶ 9.

¶ 15. The Panel, relying on the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards) §§ 4.42(a) and 7.2, determined in its first decision that a sanction was the appropriate response to respondent's conduct, as respondent had "knowingly fail[ed] to perform services for a client." This was, like her other infractions, "conduct that [was] a violation of a duty owed as a professional and cause[d] injury or potential injury to a client, the public, or the legal system." Because the Panel found that respondent was not suffering from a disability, there were no mitigating circumstances in this instance. There were, however, significant aggravating circumstances — specifically respondent's "pattern" of misconduct. Respondent has a disciplinary record for receiving an admonishment for neglecting two client cases in violation of the Vermont Code of Professional Responsibility. Additionally, the Panel noted that respondent had failed to cooperate with the investigation at nearly every step in the process. Based on Vermont case law and previous Panel determinations, the Panel concluded that a six-month suspension was the appropriate sanction for these violations. In the Panel's most recent decision, the six-month duration of the suspension resulted both from a recommendation from respondent and disciplinary counsel as well as from respondent's pattern of misconduct, including "fail[ing] to attend to the details of renewing her license," even though the Panel recognized the mitigating factor of respondent's "significant medical and personal problems" in the time leading up to the case.

¶ 16. The Panel may order suspension for an "appropriate fixed period of time not in excess of three years." A.O. 9, Rule 8(A)(2). A lawyer receiving a suspension for less than six months is allowed to resume practice after the period of suspension by "filing with the Court and serving upon disciplinary counsel an affidavit setting forth the manner in which the lawyer has complied with the requirements of the suspension order." A.O. 9, Rule 22(B). A lawyer who is suspended for six months or more, however, must file a motion with the Board for reinstatement. A.O. 9, Rule 22(B) & (D). The Panel must then hold a hearing

> at which the respondent-attorney shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency, and learning required for admission to practice law in the state, and the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest and that the respondent-attorney has been rehabilitated.

A.O. 9, Rule 22(D).

¶ 17. The Panel, in its first decision, found support for a six-month suspension (as opposed to a suspension of shorter duration) in Vermont case law, including *In re Bailey*, 157 Vt. 424, 599 A.2d 1049 (1991) (per curiam). In *Bailey*, this Court suspended a lawyer until he complied with the Board's order. We also placed a number of prerequisites for reinstatement upon the lawyer — prerequisites that were similar to those required under Administrative Order 9, Rule 22(D). We placed these conditions on the lawyer in *Bailey* even though we ultimately held that the suspension should be seen as "less than six months" under Administrative Order 9, Rule 20(B). *Bailey*, 157 Vt. at 427, 599 A.2d at 1051. Here, the Panel correctly noted that, based on Administrative Order 9, Rule 8(A)(2), suspensions must be for a specified time period. The Panel then stated that it could "achieve a similar result" to that in *Bailey* with a six-month suspension, as respondent would then have to comply with Administrative Order 9, Rule 22(D), and demonstrate, by clear and convincing evidence, that she has been rehabilitated, that she is now qualified and competent to practice law, and that she will not practice law in a way that is detrimental to the bar, the administration of justice, or the public interest. Disciplinary counsel agreed with the sentence and has stated in its brief that "the Court should suspend [respondent] for at least six months, thereby triggering the reinstatement provisions of Rules 22(B) and (D)," requiring respondent to demonstrate, like Bailey, that she is capable of fulfilling her duties. The Panel stated that it "also believe[d] that the six month suspension [was] appropriate without regard to the operation of A.O. 9 Rule 22(D)" and proceeded with an analysis of other case law.

¶ 18. While we agree with the Panel that the six-month suspension is justified in each instance here based on the underlying conduct, we would like to clarify that a six-month suspension should not be applied for the sole purpose of triggering the reinstatement process — the individual's violations must, on their own, merit a sanction of six months. A six-month suspension is a serious sanction and should not be imposed solely to require a demonstration of rehabilitation and compliance before returning to practice. Here, however, the Panel made it clear that each six-month suspension was justified on its own, and we agree.

¶ 19. In each of these hearings, the Panel determined that a six-month suspension was an appropriate sanction based on the duties respondent violated, respondent's mental state, the potential or actual injury caused by respondent's misconduct, and aggravating and mitigating factors such as respondent's current and previous history of misconduct and respondent's medical and personal problems. The Panel also based its decision on the results of and sanctions imposed by previous hearing panels in similar cases and the purpose served by the sanctions. Respondent herself makes no argument as to why we should not affirm the Panel's decisions. We find no grounds to disturb the Panel's sanctions, and we affirm the Panel's decision to suspend respondent for a duration of six months in both instances, to run concurrently. In addition, given respondent's general failure to participate in any of these proceedings, including this appeal, we add the condition that, at the time that respondent applies for reinstatement, she must provide a detailed explanation for her lack of participation over the course of these proceedings.

*Affirmed, with the added condition that, at the time that respondent applies for reinstatement, she must provide the Professional Responsibility Board with a detailed explanation for her lack of participation over the course of these proceedings.*