## In re Frederick S. LANE III, Esq.

[811 A.2d 207]

No. 02-431

October 9, 2002. Attorney Frederick S. Lane filed an Affidavit of Resignation pursuant to Rule 19(A) of Administrative Order 9. Disciplinary Counsel submitted an additional Statement of Facts. Having reviewed the filings, the Court finds that the evidence clearly and convincingly establishes that the respondent violated Rules 8.4(b), 8.4(c), and 8.4(h) of the Vermont Rules of Professional Conduct. Therefore, Frederick S. Lane's resignation from the Bar of the Vermont Supreme Court is accepted subject to the terms and conditions of Administrative Order 9, Rule 19. It is hereby ordered that Frederick S. Lane is disbarred from the office of attorney and counselor at law.

Frederick S. Lane is reminded that he must comply with A.O. 9, Rule 23.

### AFFIDAVIT OF RESIGNATION

NOW COMES Frederick S. Lane III and, pursuant to Rule 19(A) of Administrative Order 9, hereby submits this affidavit of resignation. In so doing, and being duly sworn, I hereby depose and state as follows:

1. I am an attorney licensed in the State of Vermont.

2. I desire to resign my license to practice law in the State of Vermont.

3. My resignation is being tendered freely and voluntarily.

4. In submitting my resignation, I am not subject to coercion or distress.

5. I am fully aware of the implications of submitting my resignation.

6. I am aware that in PRB File No. 2002.205, the Office of Disciplinary Counsel is investigating my self-report that while serving as Treasurer of the Chittenden Country Democrats, I temporarily used the funds under my control (roughly $1500) for personal purposes.

7. The material facts upon which these allegations are based are true.

8. I submit my resignation because I know that if the Office of Disciplinary Counsel pursues charges of misconduct predicated upon the conduct under investigation, I could not successfully defend against those charges.

9. Based on the foregoing, I freely and voluntarily resign my license to practice law in the State of Vermont.

10. The facts recited herein are based upon my personal knowledge.

### DISCIPLINARY COUNSEL'S STATEMENT OF ADDITIONAL FACTS

NOW COMES Disciplinary Counsel Michael Kennedy and, pursuant to Rule 19(B) of Administrative Order 9, submits to the Board this statement of facts supporting a finding of a violation of Rules 8.4(b), 8.4(c), and 8.4(h) of the Vermont Rules of Professional Conduct.

1. The respondent is an attorney admitted to practice law in the State of Vermont.

2. The respondent was admitted to the Vermont Bar in 1991.

3. In 1997, the respondent's license to practice law in Vermont became inactive after he failed to pay the licensing fee. It has remained inactive ever since.

4. In approximately February or March of 2001, the respondent became

the Treasurer of the Chittenden County Democratic Party ("the Party").

5. Attorney Ian Carleton is the Party Chair.

6. Attorney Carleton assumed the role of County Chair in March or April of 2001.

7. One of his first acts as Chair was to hold a fundraiser.

8. The event raised between $1,500 and $2,000 that was deposited into the Party's savings account.

9. The money was to be used for miscellaneous expenses such as advertising.

10. In his role as the Treasurer, the respondent was responsible for the account.

11. In July of 2001, the respondent removed money from the Party's account and "loaned it" to himself.

12. The Party did not authorize the respondent to take the money.

13. The respondent continued to remove money from the Party's account without permission for the next several months.

14. The respondent occasionally paid money back to the Party's account, but would end up taking more out.

15. Eventually the respondent closed the savings account and transferred the Party's money to a checking account.

16. Without having permission to do so, the respondent wrote checks to cash and used the money for personal reasons.

17. Between July of 2001 and March of 2002, the respondent removed between $1,500 and $2,000 from the Party's account and used it for personal expenses.

18. As a result of the fact that the respondent was using the Party's money for personal reasons, the account was often overdrawn.

19. The bank charged a daily fee to the overdrawn account.

20. The fee eventually rose to slightly more than $300.

21. In February or March of 2002, Attorney Carleton used some of his own money to pay for the Party's subscriptions to various periodicals.

22. Attorney Carleton asked the respondent to issue him a check for reimbursement.

23. The respondent wrote the check on the Party's account.

24. When Attorney Carleton tried to cash the check, it bounced.

25. Attorney Carleton called the respondent and asked that he drop off the Party's account records.

26. The respondent provided the records to Attorney Carleton the next day.

27. Attorney Carleton quickly realized that money was missing from the Party's account.

28. Attorney Carleton demanded that the respondent come to see him the next day.

29. Attorney Carleton met with the respondent the next day.

30. The respondent admitted to Mr. Carleton that he had used the Party's money for personal reasons.

31. The respondent repaid the money, plus the bank charges that accrued.

32. The respondent resigned as Party Treasurer.

33. The respondent has not worked as an attorney for several years.

34. The respondent's primary occupation is writing fiction. He also works as an expert witness who testifies on matters related to internet pornography.

35. Rule 8.4(b) of the Vermont Rules of Professional Conduct prohibits attorneys from engaging in conduct involving a serious crime.

36. Rule 8.4(c) of the Vermont Rules of Professional Conduct prohibits attorneys from engaging in conduct involving dishonesty, fraud, deceit and/or misrepresentation.

37. Rule 8.4(h) of the Vermont Rules of Professional Conduct prohibits attorneys from engaging in conduct that adversely reflects on their fitness to practice law.